UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TARGET STAFFING, INC. | ) |
| Plaintiff, | ) |
| v. | ) |
| DIVERSIFIED INVESTMENT ADVISORS, INC. | ) |
| Defendant. | ) |

**05cv11551 RCL**

CIVIL ACTION NO.

RECEIPT # _6581_
AMOUNT $_ 250.00_
SUMMONS ISSUED _N/A_
LOCAL RULE 4.1_____
WAIVER FORM ____
MCF ISSUED____
BY DPTY. CLK._ M.P._
DATE_____ 7/22/05_

## NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1446

Defendant Diversified Investment Advisors, Inc. ("Diversified") hereby submits its

Notice of Removal, pursuant to 28 U.S.C. § 1446, on the basis of diversity jurisdiction. As

grounds for removal, Diversified states as follows:

1.     Plaintiff originally filed its Complaint in the Superior Court of Massachusetts for

Middlesex County.

MAGISTRATE JUDGE___JLA____

2.     Diversity jurisdiction exists in this case, pursuant to 28 U.S.C. § 1332(a)(1),

because Diversified is not a citizen of Massachusetts or of any state in which Plaintiff resides or

is a citizen and because Plaintiff alleges an amount in controversy in excess of $75,000.

3.     Plaintiff's Complaint alleges that Plaintiff is a Massachusetts corporation with a

principal place of business in Massachusetts. Compl. ¶ 1.

4.     Contrary to the Complaint's allegations, Diversified's principal place of business

is in New York State (4 Manhattanville Road, Purchase, NY 10577). Affidavit of Marc Cahn

("Cahn Aff.") ¶ 3. Diversified is incorporated in the state of Delaware. Id.

5. Plaintiff's Complaint alleges that Plaintiff is "entitled to damages of at least

$125,000." Compl. at 1.

6. Diversified also submits contemporaneously herewith the Affidavit of Marc Cahn,

the Notice of Notice of Removal, and Transmittal Affidavit of Kevin J. O'Connor, Esq.,

attaching thereto true and accurate copies of the (i) Summons, (ii) Complaint, (iii) Tracking

Order, (iv) Transmittal Affidavit of Kevin J. O'Connor, and (v) Docket Entries, all of which

were filed with or issued by the Superior Court for Middlesex County.

Dated: July 22, 2005
Boston, MA

Respectfully Submitted,

Kevin J. O'Connor (BBO# 555250)
Mayeti Gametchu (BBO# 647787)
PARAGON LAW GROUP, LLP
184 High Street
Boston, MA 02110
(617) 399-7950

Attorneys for Defendant

DIVERSIFIED
INVESTMENT ADVISORS, INC.

## CERTIFICATE OF SERVICE

I, Mayeti Gametchu, hereby certify that, on July 22, 2005, I caused a true and correct
copy of the foregoing document to be served by first class mail, postage prepaid, on counsel for
Plaintiff, Alexander Furey, 28 State Street, Suite 1100, Boston, MA 02109.

0054-002-101908.doc

**TO PLAINTIFF'S ATTŪ NEY: PLEASE CIRCLE TYPE OF ACTION VOLVED: —**
**TORT — MOTOR VEHICLE TORT — CONTRACT —**
**EQUITABLE RELIEF — OTHER**

### COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 65 - 2197

........MIDDLESEX......... , ss
[seal]

TARGET STAFFING, INC., Plaintiff(s)

v.

DIVERSIFIED INVESTMENT ADVISORS, INC., Defendant(s)

### SUMMONS

DIVERSIFIED INVESTMENT ADVISORS, INC.
275 GROVE STREET
To the above-named Defendant:   NEWTON, MASSACHUSETTS

You are hereby summoned and required to serve upon ...ALEXANDER.FUREY,..ESQ................

.................................................. plaintiff's attorney, whose address is ..28..STATE..ST...............

...ST....11.00,..BOSTON,..MA................................, an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at 40...THORNDIKE.......

CAMBRIDGE, MA...................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse** ........... Esquire, at ..............................................................

the ................24th................................ day of ...JUNE...................................................

...................., in the year of our Lord ......2005............................ .

Edward J Sullivan
Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
for each defendant, each should be addressed to the particular defendant.

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on ......... *June 27, 2005*

20........., I served a copy of the within summons, together with a copy of the complaint in this action,
upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

*by serving in hand Marc Cahn, general Counsel Diversified*
*Investment Advisors, Inc., 275 Grove St, Newton, MA*

.......................................................................................................................

*Carl Wilson*

Dated: ...... *June 27, 2005* ........................................................ *appointed special process*
*server*

## N.B.  TO PROCESS SERVER:
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX
ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( )
( *June 27, 2005* )
( )

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX .......... ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.

TARGET STAFFING, INC. ......, Plff.

v.

DIVERSIFIED INVESTMENT ADVISORS, INC.
..........., Deft.

SUMMONS
(Mass. R. Civ. P. 4)

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts<br>SUPERIOR COURT DEPARTMENT<br>County: Middlesex | Docket Number |
|---|---|---|

PLAINTIFF(S) Target Staffing, Inc.

DEFENDANT(S) Diversified Investment Advisors, Inc.

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE
Alexander Furey    28 State St., Ste 1100
Furey & Associates, LLC Boston, MA 02109
Board of Bar Overseers number:    617-573-5114

ATTORNEY (if known)

## Origin code and track designation

Place an x in one box only:
[ x ] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. c. 231, s.104
    (Before trial)    (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript;relief from judgment/
    Order (Mass.R.Civ.P. 60)    (X)
[ ] 6. E10 Summary Process Appeal    (X)

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A01 | Contract | (F) | ( x ) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS
**(Attach additional sheets as necessary)**

A. Documented medical expenses to date:
  1. Total hospital expenses ........................................................ $................
  2. Total Doctor expenses ......................................................... $................
  3. Total chiropractic expenses ................................................... $................
  4. Total physical therapy expenses ............................................... $................
  5. Total other expenses (describe) ............................................... $................
                                                              Subtotal   $................
B. Documented lost wages and compensation to date ................................ $................
C. Documented property damages to date .......................................... $................
D. Reasonably anticipated future medical and hospital expenses .................... $................
E. Reasonably anticipated lost wages ............................................. $................
F. Other documented items of damages (describe)

                                                                         $................
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)


                                                                         $................
                                                              TOTAL: $................

## CONTRACT CLAIMS
**(Attach additional sheets as necessary)**
Provide a detailed description of claim(s):
breach of contract, breach of covenant of good faith,
unjust enrichment, Tortious Interference + 93A claims.    TOTAL    $125,000.00

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record _____    DATE: 6-22-05

A.O.S.C. 2003

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, SS.**

**SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT**

|  |  |  |
|---|---|---|
| **TARGET STAFFING, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-2197** |
| | ) | |
| **DIVERSIFIED INVESTMENT** | ) | |
| **ADVISORS, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT AND JURY DEMAND

This is an action by Plaintiff Target Staffing, Inc. ("Target") against Defendant

Diversified Investment Advisors, Inc. ("Diversified" or "Company") for breach of contract,

breach of the covenant of good-faith and fair dealing, unjust enrichment, tortuous interference

with contract and business relations, and unfair business practices. The claims at issue flow from

Diversified's breach of a Temporary Services Agreement ("Agreement") which provides that

Diversified must compensate Target in the event it directly or indirectly hires and/or converts

any temporary personnel referred to the Company by Target. Starting in or about April 2005,

Diversified repeatedly breached the parties' Agreement by improperly hiring and/or converting

five (5) such temporary personnel without compensating Target. As a result of Diversified's

actions, Target is entitled to damages of at least **$125,000.**

## PARTIES

1. Plaintiff Target Staffing, Inc. is a Massachusetts corporation whose principal place of business is located in Stow, Massachusetts.

2. Defendant Diversified Investment Advisors, Inc. is a Delaware Corporation with a principal place of business located at 275 Grove Street, Newton, Massachusetts.

## FACTUAL BACKGROUND

3. Diversified is a financial services company, headquartered in Purchase, NY, which has offices located throughout the United States including an office in Newton, Massachusetts which employs approximately 80 people.

4. Target is a small staffing agency that focuses on the placement of temporary and permanent personnel to work within the financial services industry. Target is owned and operated by Janine Bush who has close to ten years experience in the recruiting/staffing industry. Ms. Bush operates Target out of her home in Stow, Massachusetts while she cares for her two young children.

5. Over the years, Ms. Bush has worked to establish a network of individuals and companies that refer her candidates looking for permanent and/or temporary work in the financial services industry. In the event Ms. Bush places a candidate on a permanent basis, Target charges a set percentage of that individual's annual salary. If Ms. Bush places an individual on a temporary basis, then Target is paid a mark-up rate of the individual's hourly billable rate. If the placement is going to be on a temporary basis, Target hires the candidate as an independent contractor via a written agreement. The candidate is not considered an employee of Target's.

6. In or about the Spring of 2004, Ms. Bush was introduced to Marc H. Cahn, the Vice President and General Counsel for Diversified. At that time, Mr. Cahn informed Ms. Bush that

2

Diversified was looking for temporary and permanent help in their Newton Office and requested

that Target supply the Company with suitable candidates.

7.    On or about March 19, 2004, Ms. Bush e-mailed Mr. Cahn a Temporary Services

Agreement and related Attachment which establishes the terms of the parties' relationship with

respect to the placement of temporary personnel. *See* Temporary Services Agreement and

Attachment, collectively attached hereto as Exhibit 1.

8.    The parties' Agreement explicitly prohibits Diversified from poaching personnel

temporarily placed by Target without Diversified providing it with just compensation.  In Section

7.1 of the Agreement, Diversified explicitly "agrees not to condone or assist in the transitioning,

recruiting or enticing of Target Staffing, Inc.'s temporary personnel on assignment at

[Diversified] to transfer to any third party or alternative status." *Id.* at p.5, ¶ 7.1.

9.    The Attachment to the parties' Agreement clarifies exactly when and how much

Diversified is required to pay Target upon the hiring and/or conversion of any such temporary

personnel.  Specifically, the Attachment to the Agreement states:

> [a] conversion fee will become due in the event that you, your
> associates or affiliates engage the services of a Target Staffing
> employee or former employee (either as a salaried employee or as
> an independent contractor) or engage the employee through an
> employee leasing company or other temporary help agency
> through whom you lease personnel, during a temporary assignment
> or within one (1) year after the last day of any assignment when
> that employee has been introduced whether directly or indirectly as
> a result of his or her temporary assignment.  Please refer to the
> schedule of charges on the following page.

Exhibit 1, p. 8.  The Attachment to the Agreement also includes a document entitled

"CONVERSION PLACEMENT FEE SCHEDULE" which provides a formula to calculate the

3

conversion fee that Diversified is required to pay Target for each temporary worker that is hired and/or converted by the Company. *See Id.* at p. 10.

10.     The Agreement was signed by Mr. Cahn as General Counsel of Diversified Actuarial Services, a division of Diversified Investments, on March 25, 2004. *Id.* at p. 7. Likewise, pursuant to the language of the Attachment to the Agreement, Diversified consented to its explicit terms upon the acceptance of Target's temporary candidates in late March 2004. *Id.* at p. 9.

11.     Thereafter, over the next 12 months, Target referred several candidates to Mr. Cahn which were temporarily hired by Diversified, including the following individuals:

| Candidate | Title | Date of Hire | Annual Salary |
|-----------|-------|--------------|---------------|
| Brody Reese | Product Development | August 2004 | $97,760 |
| Mirza Borogovac | Data Analyst | September 2004 | $35,360 |
| Gennadiy Ravvin | Senior Project Analyst | March 2004 | $98,840 |
| Andrew Lumb | Calculation Analyst | March 2004 | $55,120 |
| Robert Compagna | Senior Data Analyst | February 2005 | $99,840 |

12.     For almost a year after the parties entered into the Agreement at issue, Target and Diversified shared a mutually profitable relationship. Ms. Bush and Mr. Cahn worked closely together to ensure that Diversified hired and retained highly qualified individuals willing to work on a temporary basis and forego receiving the benefits of full-time employment. At the same time, each week Target earned a mark-up on the hourly rate paid by Diversified to each of its temporary workers.

13.     However, in or about early April 2005, Ms. Bush was informed by Mr. Cahn that Diversified had instructed Robert Compagna to cease working with Target and incorporate

4

himself so that Mr. Compagna could have more flexibility and work directly with Diversified. Contrary to the requirements of the parties' Agreement, Diversified did not compensate Target for converting Mr. Compagna. In response, Ms. Bush explained to Mr. Cahn that Diversified was in breach of the explicit terms of the parties' Agreement and was causing Mr. Compagna to violate his own agreement with Target. Target demanded that Diversified honor the terms of its Agreement and cease interfering with its business relationship with Mr. Compagna.

14. Thereafter, Diversified and Target's relationship deteriorated. In or about May 2005, Mr. Cahn instructed Gennadiy Ravvin, Brody Reese, and Mirza Borogovac that they, too, were to breach their agreements with Target and engage the services of another staffing agency -- BeneTemps, Inc. ("BeneTemps"), a direct competitor of Target. Once again, Diversified ignored the explicit terms of the parties' Agreement and failed to compensate Target for the loss of its personnel.

15. In or around June 1, 2005, Diversified recruited and hired Andrew Lumb as a permanent salaried employee just a few months after he left Diversified for a permanent position with another company -- Mercer Human Resources Consulting ("Mercer"). Mr. Lumb had previously been placed at Diversified by Target as temporary personnel and worked at the Company until March 2005. The parties' Agreement specifically provides that if Diversified hires one of Target's temporary personnel within one (1) year of leaving Diversified, then it must compensate Target pursuant to the applicable Conversion Fee Schedule. *See Id.* at p. 9. Not only did Diversified fail to compensate Target when it hired Mr. Lumb, it also caused Target to forfeit a $12,125.00 commissions it had earned from Mercer for placing Mr. Lumb.

16. Due to the actions of Diversified, Target has lost (5) five of its temporary personnel – a significant portion of its yearly revenue. Pursuant to the parties' Agreement and attached

5

Conversion Fee Schedule, Diversified is required to compensate Target for directly or indirectly hiring and/or converting each of those employees as follows:

| Employee | Date of Conversion | Amount Owed Under Conversion Fee Schedule |
|---|---|---|
| Brody Reese | May 20, 2005 | $24,195.60 |
| Mirza Borogovac | May 13, 2005 | $8,751.60 |
| Gennadiy Ravvin | May 20, 2005 | $24,710.40 |
| Andrew Lumb | June 13, 2005 | $13,642.20 |
| Robert Compagna | May 20, 2005 | $29,652.48 |

17.    In addition, Target continues to lose weekly revenue for each of the temporary personnel that Diversified has directly or indirectly hired and/or converted from Target. Due to the actions of Diversified, Target has lost the following weekly revenues:

| Employee | Amount of Lost Weekly Revenue | Date of Conversion |
|---|---|---|
| Brody Reese | $720.00 | May 20, 2005 |
| Mirza Borogovac | $520.00 | May 20, 2005 |
| Gennadiy Ravvin | $480.00 | May 20, 2005 |
| Robert Compagna | $740.00 | April 15, 2005 |

18.    On or about June 1, 2005, Mr. Cahn sent a letter to Target's counsel terminating the parties' Agreement due to his belief that Target allegedly failed to withhold state and federal taxes from the paychecks of the temporary personnel hired and/or converted by Diversified. In short, Mr. Cahn tried to intimidate Ms. Bush and avoid honoring the parties' Agreement by making unfounded accusations of tax fraud. In addition, Mr. Cahn threatened to terminate the

6

individuals whom Ms. Bush had placed at Diversified and take away their livelihood if she pursued this dispute.

## COUNT I
## BREACH OF CONTRACT

19. Plaintiff repeats and incorporates by reference paragraphs one through eighteen as if fully stated here.

20. On or about March 25, 2004, Target and Diversified entered into an Agreement whereby (for a period of one (1) year from the employees' last day at the Company) Diversified was required to compensate Target in the event it directly or indirectly hired and/or converted any of the temporary personnel that Target referred to Diversified.

21. From April 2005 to June 2005, Diversified directly and indirectly hired and/or converted five (5) of target's temporary personnel (Compagna, Ravvin, Reese, Borgovac, and Lumb) without compensating Target as required by the explicit terms of the parties' Agreement.

22. As a result of Diversified's breach of contract, Target has suffered damages.

## COUNT II
## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

23. Plaintiff repeats and incorporates by reference paragraphs one through twenty-two as if fully stated here.

24. Diversified breached the covenant of good faith and fair dealing implied in the Agreement by failing to compensate Target for the temporary personnel that it directly and indirectly hired and/or converted in violation of the explicit terms of the parties' Agreement.

25. As a result of Diversified's breach of the implied covenant of good faith and fair dealing, Target has suffered damages.

## COUNT III
## UNJUST ENRICHMENT

26.    Plaintiff repeats and incorporates by reference paragraphs one through twenty-five as if fully stated here.

27.    By the wrongful acts and conduct described above, Diversified has been unjustly enriched to the expense and detriment of Target.

28.    As a result, Target has suffered damages for which Diversified is legally responsible.

29.    Diversified is liable to Target under the principle of unjust enrichment.

## COUNT IV
## TORTIOUS INTERFERENCE WITH
## CONTRACTUAL AND ADVANTAGEOUS BUSINESS RELATIONS

30.    Plaintiff repeats and incorporates by reference paragraphs one through twenty-nine as if fully stated here.

31.    At all relevant times, Diversified had knowledge of the agreements that Target had entered into with Compagna, Ravvin, Reese, Borgovac and Lumb.

32.    By directly and/or indirectly hiring and/or converting Compagna, Ravvin, Reese, Borgovac and Lumb, Diversified has interfered with and induced the breach of Target's agreement with those individuals and/or has interfered with Company's advantageous business relationship with those individuals.

33.    As a result, Target has forever lost those individuals as clients (in some cases to a direct competitor) and has suffered damages for which Diversified is legally responsible.

34.    Diversified is liable to Target under the principle of tortuous interference with contractual and advantageous business relations.

8

## COUNT V
## UNFAIR TRADE PRACTICES

35.    The Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs one through thirty-four as if fully stated herein.

36.    Upon entering into the Agreement at issue with Target, Diversified engaged in trade or commerce within the Commonwealth of Massachusetts. The acts of Diversified set forth above including, but not limited to, (1) its bad faith breach of the Agreement by directly or indirectly hiring and/or converting five (5) of target's temporary personnel without compensating Target as required by the explicit terms of the parties' Agreement; (2) its improper termination of the Agreement; (3) its threat to terminate the temporary personnel placed by Target if it pursued this matter; and (4) its bad faith refusal to pay Target for the damages that it has suffered, are unfair and deceptive acts under Mass. Gen. L. ch. 93A, §§ 2, 11.

37.    The actions constituting Diversified's unfair and deceptive acts occurred primarily and substantially within Massachusetts. Specifically, Target suffered a breach of the Agreements and sustained damages while operating in Massachusetts.

38.    Diversified's violations of Mass. Gen. L. ch. 93A were willful.

39.    As a result of Diversified's unfair and deceptive acts, Target has sustained damages.

WHEREFORE, Plaintiff Target Staffing, Inc. respectfully requests that the Court enter judgment in its favor on Counts I-V of the Complaint and grant the following relief:

1.    Under Counts I-V, award damages in the amount of $125,000, plus interest.

2.    Under Count V, find that Defendant has committed willful violations of Mass.

Gen. L. ch. 93A, §§ 2, 11 and award Plaintiff treble damages and attorneys' fees;

3.    Award Plaintiff its reasonable costs, including attorneys' fees and expenses,

incurred in connection with this case; and

4.    Grant such further relief as the Court considers appropriate.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted by the Plaintiff,

## TARGET STAFFING, INC.

By its attorney,

Alexander Furey, BBO# 634157
Furey & Associates LLC
28 State Street
Suite 1100
Boston, Massachusetts 02109
Phone (617) 573-5114

Dated: June 22, 2005

10

EXHIBIT NO. 1

# Target Staffing, Inc

## TEMPORARY SERVICES AGREEMENT

This Temporary Services Agreement (the "Agreement"), effective the 17th day of March, 2004, is entered into by and between Target Staffing Inc and Diversified Investments, with offices at  275 Grove Street, Newton, MA ("Client").

WHEREAS Client wishes to obtain certain temporary services from Target Staffing Inc, and Target Staffing Inc wishes to provide such services to Client;

NOW, THEREFORE, Client and Target Staffing Inc, in consideration of the mutual promises contained herein and other good and valuable consideration given and received, agree to the following terms and conditions:

## 1. SERVICES

1.1 The services to be provided by Target Staffing Inc under this Agreement shall be to furnish to Client temporary personnel with skills meeting the requirements specified by Client.

1.2 Client shall designate its authorized representative at each of its locations who shall place orders for temporary personnel by telephoning Target Staffing Inc. When Target Staffing Inc receives an order, Target Staffing Inc will telephone Client's representative within two hours from the time of such order informing Client whether it can service the order.

1.3 Temporary personnel will report to a Client location and supervisor specified on each order at the prescribed time indicated. Client will supervise the assigned temporary personnel in performing the agreed upon duties. Client agrees to provide any general or specific safety training necessary to perform the assignment including safety information regarding exposures to hazardous substances, and to insure that Target Staffing Inc employees use any protective equipment necessary to perform the assignment safely.

1.4 If any temporary personnel of Target Staffing Inc fails to meet Client's requirements for the services to be provided, and Client notifies Target Staffing Inc of its dissatisfaction during the first eight (8) hours of the assignment, Target Staffing Inc shall immediately remove the personnel from the assignment, and Client shall not be required to make any payment to Target Staffing Inc for the hours worked by such temporary personnel, up to a maximum of eight (8) hours.

# Target Staffing, Inc

2.    TEMPORARY PERSONNEL

    2.1 The temporary personnel assigned to Client are employees of Target Staffing Inc, not of Client.

3.    TARGET STAFFING INC FEE FOR SERVICES

    3.1 Target Staffing Inc shall pay its temporary personnel at an hourly Pay Rate for each regular hour worked by said temporary personnel. Client shall pay Target Staffing a fee at an hourly Bill Rate for each regular hour worked by Target Staffing Inc's temporary personnel. The hours worked by Target Staffing Inc's temporary personnel will be set forth in weekly time sheets and approved by Client's representative.

    3.2 If Client wants any Target Staffing Inc temporary personnel to receive vacation or holiday pay, Client will include the vacation or holiday time on the timecards for the Target Staffing Inc's temporary personnel, and Client will pay Target Staffing Inc for such time at the rates referred to above.

    3.3 The hourly Bill Rates for the temporary services can be adjusted by Target Staffing Inc, with approval from Client, from time to time for any reason including (but not limited to) increases in minimum wage, statutory taxes and premiums, and liability and fidelity insurance costs.

    3.4 Target Staffing Inc shall submit invoices on a weekly basis to the designated Client location/representative for hours worked (and any approved vacation or holiday time) for the previous week together with a copy of the timecard(s) signed by the Target Staffing Inc temporary personnel and Client's authorized representative. Client shall pay all invoices net upon receipt in its twice-per-month invoice billing cycle, without offset or deduction. Client shall promptly notify Target Staffing Inc of any disputed or questioned item on an invoice, and the parties shall work together in good faith to resolve the issue; in the event it is determined that Client is entitled to a credit, Target Staffing Inc shall credit Client in the next invoice for the appropriate amount. In the event that Client fails to pay Target Staffing Inc's invoice when due, Client shall pay all collection and/or litigation costs incurred by Target Staffing Inc, plus reasonable attorney's fees.

4.    TERM AND TERMINATION

# Target Staffing, Inc

4.1     The initial term of this Agreement shall commence on March 17, 2004, 2004 and shall continue through March 17, 2005. Thereafter, this Agreement shall be automatically extended from year to year unless and until either party terminates it as of an anniversary date by giving the other party written notice of such termination at least 30 days prior to such anniversary date.

4.2     Notwithstanding the foregoing, either party has the right, exercisable in its sole discretion at any time, to terminate this Agreement for its convenience, by giving the other party at least 30 days written notice of such termination.

4.3     If Client in its sole discretion determines Target Staffing Inc's performance under this Agreement to be unsatisfactory, Client will give Target Staffing Inc written notice thereof. If within thirty (30) days after receipt of such notice, Target Staffing Inc has not corrected such unsatisfactory performance to Client's satisfaction; Client may thereafter terminate this Agreement immediately upon written notice to Target Staffing Inc.

Subject to Section 4.3 above, each party has the right to terminate this Agreement immediately upon written notice to the other party, at any time, in the event of any material breach by the other party of its obligations under this Agreement.

## 5.    RELATIONSHIP OF PARTIES

5.1     At all times during the term of this Agreement, Target Staffing Inc shall retain its independent status, and Target Staffing Inc and its employees are and shall at all times be independent contractors to Client.

5.2     Neither Target Staffing Inc nor any of Target Staffing Inc's employees, associates, contractors, agents or representatives will be eligible for any of Client's employee benefits.

5.3     Target Staffing Inc shall comply with all federal and state labor and employment laws applicable to its performance of the Services.

# Target Staffing, Inc

6.    INDEMNIFICATION

Target Staffing Inc shall indemnify, defend, and hold harmless Client, its affiliates, shareholders, directors, officers, employee, agents, and other representatives from and against any and all claims, demands, losses, liabilities, damages, expenses (including reasonable attorney fees) and causes of action (hereinafter Claims) for (i) injury to, or death of, any person, including without limitation the employees, agents, contractors, licensees, and invitees of Client unless such injury or death is covered by Client's workers' compensation policy; (ii) damage to, or destruction of, any property, whether owned by Client or otherwise; or (iii) the failure of Target Staffing Inc to comply with the provisions of this Agreement, but in each case, only to the extent such Claims are caused by the fault, negligence, gross negligence, or recklessness of Target Staffing Inc in the performance of the services defined in the Agreement. Target Staffing Inc's indemnity herein shall not extend to or cover any Claim arising from the negligence or intentional misconduct of Client; where personal injury or death or loss of, damage to or destruction of property is the result of the joint negligence or intentional misconduct of Client and Target Staffing Inc, the amount of the Claim for which Client shall be entitled to indemnification shall be limited to that portion thereof attributable to the negligence or intentional misconduct of Target Staffing Inc.

Liability hereunder is contingent upon prompt notification by Client to Target Staffing Inc of the assertion of any claim within the purview of this Agreement so as to permit Target Staffing Inc reasonable time within which to notify its insurers of such claim, and the tender of the defense thereof by Target Staffing Inc.

Client shall provide, upon its own premises, a suitable place for Target Staffing Inc's temporary personnel to work in the performance of the Services to be rendered under this Agreement which shall comply with all applicable statutes and ordinances relating to health and safety.

Client shall not authorize any Target Staffing Inc temporary personnel to operate any motor vehicle, automotive or truck equipment without signing a driver's release form supplied by Target Staffing Inc. Notwithstanding anything to the contrary in this Agreement, Client agrees to accept full responsibility for any bodily injury, physical loss, property damage or liability including fire, theft and collision caused or incurred by any Target Staffing Inc temporary personnel while said personnel is operating any of the aforementioned vehicles or equipment.

Excluded from the indemnification described in this section, is the handling of cash, checks, keys, credit cards, merchandise, negotiable instruments or other valuables unless Target Staffing Inc has given its express prior approval in writing. Further, no Target Staffing Inc temporary personnel assigned to Client is

# Target Staffing, Inc

authorized or empowered to render a professional opinion on any financial statement on behalf of Target Staffing Inc or Client, and may not sign his or her name or Target Staffing Inc's name to any financial statement or any tax return, while on assignment to Client.

Client agrees that Target Staffing Inc will not be responsible for any claims covered by its Fidelity Bond unless such claims are reported in writing to Target Staffing Inc, in accordance with the notice provisions set forth in this Agreement, within ten (10) working days of the discovery of the alleged wrongful act.

IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, SPECIAL, OR PUNITIVE DAMAGES OR EXPENSES OR LOST PROFITS (REGARDLESS OF HOW CHARACTERIZED AND EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES) UNDER OR IN CONNECTION WITH THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION (WHETHER IN CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY, OR OTHERWISE).

## 7.    TRANSITIONING OF EMPLOYEES

During the term of this Agreement and upon any termination of this Agreement, Client agrees to the following:

7.1    Client agrees not to condone or assist in the transitioning, recruiting or enticing of Target Staffing Inc's temporary personnel on assignment at Client to transfer to any third party or alternate status, with the exception of an offer of full-time regular employee status at Client. If, within _____ months of assignment, Client hires any Target Staffing Inc's temporary personnel as a Client employee, or if any such Target Staffing Inc temporary personnel is employed by another temporary help company or agency and works on the premises of Client, Client shall promptly pay Target Staffing Inc an amount equal to 18 percent of the candidate's permanent salary; provided, however, that Client shall not be obligated to pay such fee for any Target Staffing Inc temporary personnel who was on Client's payroll immediately prior to becoming employed by Target Staffing Inc.

7.2    In the event of termination of this Agreement, each Target Staffing Inc temporary personnel will continue the assignment through the period of time referenced on the current Target Staffing Inc work order unless it is determined there is a failure to perform the job function required, or the assignment has legitimately terminated for other reasons. In this event, Client will not consider the same employee for reassignment at Client through any other source in a similar capacity.

# **Target Staffing, Inc**

Target Staffing Inc agrees that in the event of termination of this Agreement, Target Staffing Inc will not remove its temporary personnel from assignment at Client prior to completion of assignment for reasons other than Client's failure to pay in a timely manner for the Services provided or for breach by Client of this Section 8.

## 8.    AUDIT RIGHTS

For a period of at least two years following the date particular Services are provided to Client under this Agreement, or for such longer period as may be required by applicable law, Target Staffing Inc agrees to maintain accounting records necessary to verify the basis for all charges billed to Client hereunder. Client will have the right to audit such records during normal business hours upon at least seven (7) days prior written notice to Target Staffing Inc. Each party will bear its own costs and expenses in connection with such audit.

## 9.    NOTICES

Any notice required or permitted to be delivered by one party to another under or in connection with this Agreement shall be deemed sufficiently given after three business days if sent by certified U.S. mail, return receipt requested, or after one business day if sent by nationally recognized overnight carrier to the attention of the individual(s) and at the address(es) indicated below:

If to Target Staffing Inc, to:

> Target Staffing Inc
> Box 33
> Stow, MA 01775
>
> _____

If to Client, to:

> _____
> _____
> _____

With a copy to:

> _____
> _____
> _____

# Target Staffing, Inc

10.   MISCELLANEOUS

10.1 Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns. This Agreement shall not be assigned in whole or in part by either party without the prior written consent of the other party, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, either party may without the consent of the other party assign this Agreement, or delegate the performance of all or part of its obligations and duties hereunder, to an Affiliate (provided the party guaranty the Affiliate's performance) or to any successor to all or substantially all of its interest in the business to which this Agreement relates. As used herein, "Affiliate" of a party shall mean any corporation or other business entity controlled by, controlling or under common control with, such party.

10.2 Governing Law. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Massachusetts, notwithstanding its choice of law principles.

10.3 Compliance with Laws. In the performance of this Agreement, each party agrees to comply with all applicable laws, rules, and regulations of duly constituted governmental bodies.

10.4 Severability. In the event that any provision of this Agreement or the application thereof becomes or is declared by a court of competent jurisdiction to be illegal, void or unenforceable, the remainder of this Agreement will continue in full force and effect. The parties further agree to replace such illegal, void or unenforceable provision of this Agreement with a legal, valid and enforceable provision that will achieve, to the extent possible, the economic, business and other purposes of such illegal, void or unenforceable provision.

10.5 Waiver. The failure of either party to enforce at any time or for any period of time any of the provisions of this Agreement shall not be construed to be a waiver of such provisions or of its right thereafter to enforce each and every provision.

10.6 Force Majeure. Neither party to this Agreement shall be liable for its failure to perform hereunder due to circumstances beyond its reasonable control, including but not limited to strike, riot, war, fire, act of God, accident, plant breakdown not caused by the fault or neglect of such party, compliance with any law, regulation or order, whether valid

# Target Staffing, Inc

or invalid, of the United States of America or any other governmental body.

10.7 Survival. Any respective obligations of Target Staffing Inc or Client hereunder which by their nature would continue beyond the termination, cancellation or expiration of this Agreement shall survive such termination, cancellation or expiration.

10.8 Complete Understanding; Modification. This Agreement, together with all attachments, exhibits and addenda attached hereto, constitute the full and complete understanding and agreement of the parties relating to the subject matter hereof and supersedes all prior or contemporaneous understandings and agreements relating to such subject matter. Any waiver, modification or amendment of any provision of this Agreement shall be effective only if in writing and signed by the parties hereto.

10.9 Headings. Section headings are included for convenience only and are not to be used to construe or interpret this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates set forth below, to be effective as of the date first set forth above.

By:Target Staffing Inc

Signature: _Quen f Pon_

Printed Name: _Janine Bush_

Title: _Manager_

Date: _3 20 04_

By: _Diversified Astorial Service_ (Client)

Signature: _M L_

Printed Name: _Marc Cahn_

Title: _General Counsel_

Date: _3|25|04_

# Target Staffing, Inc

Thank you for selecting Target Staffing to fill your temporary staffing requirements. The following confirms our discussion and understanding and sets forth the terms under which our employee is assigned to your company. The terms of this Agreement as defined below shall automatically apply to any subsequent assignment (s) of temporary staff through Target Staffing.

## GUARANTEE

Target Staffing guarantees your satisfaction with the assigned employee's services by extending a one-day (eight hour) guarantee as follows: if for any reason you are dissatisfied on the first day of an assignment with the employee's technical abilities, please let us know immediately and Target Staffing will not charge you for the first eight hours worked. We will then make a reasonable effort to replace the individual immediately.

## BILLING

Our employee will present a time sheet to his/her immediate supervisor for verification at the end of each week. Our compensation to this employee is on a weekly basis: therefore, your firm or company (hereinafter referred to as the client) will be billed weekly at the agreed upon rate, and payment will be due weekly upon receipt of the invoice. Overtime hours will be billed at rate multiples in accordance with State, Provincial and Federal Laws. In the event that the client fails to pay the charges of Target Staffing when due (whether for temporary or permanent placement of personnel), the client shall pay interest charges on overdue invoices at the highest legal rate as well as all collection and/or litigation costs, inclusive of reasonable attorney's fees.

## CONVERSION FEE

A conversion fee will become due in the event that you, your associates or affiliates engage the services of a Target Staffing employee or former employee (either as a salaried employee or as an independent contractor) or engage the employee through an employee leasing company or other temporary help agency through whom you lease personnel, during a temporary assignment or within one (1) year after the last day of any assignment when that employee has been introduced either directly or indirectly as a result of his or her temporary assignment. Please refer to the schedule of charges on the following page.

## POLICIES

The supervision of the employees of Target Staffing on the premises of the client is the responsibility of the client. All rescheduling or extension of assignments should be done by contacting Target Staffing. Any employee assigned by Target Staffing is an employee of Target Staffing. Target Staffing warrants that its employees are adequately covered by Worker's Compensation Insurance and that it assumes total responsibility to pay the employee's salary, all related federal, state, provincial and local payroll taxes and other applicable charges and to make all applicable deductions.

# Target Staffing, Inc

Your satisfaction is our primary concern. We hope that you will evaluate the performance of our employee on the form we provide at the end of the assignment. This feedback is an important part of our on-going effort to ensure the highest standards for our specialized temporary services. Please contact us immediately if you have a question regarding the above terms or any aspect of our services.

Acceptance of our employee confirms your acceptance of the above conditions.



# Target Staffing, Inc

## CONVERSION PLACEMENT FEE SCHEDULE

(A)   Our conversion placement fee schedule is based upon our normal full permanent placement fee schedule one percent (1%) for each one thousand dollars of annual compensation to a maximum fee of 33% of the annual compensation.

### PERMANENT PLACEMENT FEE SCHEDULE

$8\ 2.\ 8$

| COMPENSATION | FEE |
|---|---|
| 0 to $22,999.99 COMPENSATION | 22% OF ANNUAL |
| $23,000 to $23,999.99 COMPENSATION | 23% OF ANNUAL |
| $24,000 to $24,999.99 COMPENSATION | 24% OF ANNUAL |
| $25,000 to $25,999.99 COMPENSATION | 25% OF ANNUAL |
| $26,000 to $26,999.99 COMPENSATION | 26% OF ANNUAL |
| $27,000 to $27,999.99 COMPENSATION | 27% OF ANNUAL |
| $28,000 to $28,999.99 COMPENSATION | 28% OF ANNUAL |
| $29,000 to $29,999.99 COMPENSATION | 29% OF ANNUAL |
| $30,000 to $30,999.99 COMPENSATION | 30% OF ANNUAL |
| $31,000 to $31,999.99 COMPENSATION | 31% OF ANNUAL |
| $32,000 to $32,999.99 COMPENSATION | 32% OF ANNUAL |
| $33,000 AND UP COMPENSATION | 33% OF ANNUAL |

(B)   We offer reductions in this fee for conversions based on the number of billable hours worked by our temporary worker as follows -

| Billable Hours Worked | Reduction From Full Fee |
|---|---|
| 0 - 250 | No Reduction |
| 251 - 400 | 10% Reduction |

**978-897-8505**
admin@targetstaffing.com
P.O. Box 33, Stow, MA 01775



# Target Staffing, Inc

401 - 550          20% Reduction
551 + Above      25% Reduction

(C)   For part time employees, the fee will be based on a forty (40) hour work week and then multiplied by the percentage of the 40 hour work week that the employee works.

> Example:
>
> The fee for a part time accounting clerk to be engaged by the Client at $10/hour pay rate for 30 hours per week after having completed 300 hours of temporary employment would be calculated as follows:
>
> > $10.00 x 40 hours per week = $400.00 per week;
> > $400.00 x 52 weeks per year = $20,800.00 annualized.
> > Full time fee = $20,800 x 22% = $4,576.00
> >
> > Part time fee = $4,576 x 30/40 = $3,432.00
> > Less 10% reduction per (B) above = $3,088.80

## TERMS: NET DUE UPON RECEIPT

$48 \times 40 = 1920 \text{ wk}$

$1920 \times 52 \text{wks} = 99840$

$99840 \times \dfrac{32\%}{20} = 32,942.20$

$32942.20 \times \dfrac{30}{.75} = 2,4,370$

Less 25% disc

**978-897-8505**
admin@targetstaffing.com
P.O. Box 33, Stow, MA  01775

### ommonwealth of Massachusetts
#### County of Middlesex
#### The Superior Court

CIVIL DOCKET# **MICV2005-02197-F**

RE:   **Target Staffing, Inc. v Diversified Investment Advisors, Inc.**

TO:Alexander Furey, Esquire
Furey & Associates LLC
28 State Street - Suite 1100
Boston, MA 02109

## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court
Standing Order 1-88. The order requires that the various stages of litigation described
below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                           DEADLINE

| Stages of Litigation | Deadline |
|---|---|
| Service of process made and return filed with the Court | 09/21/2005 |
| Response to the complaint filed (also see MRCP 12) | 11/20/2005 |
| All motions under MRCP 12, 19, and 20 filed | 11/20/2005 |
| All motions under MRCP 15 filed | 11/20/2005 |
| All discovery requests and depositions completed | 04/19/2006 |
| All motions under MRCP 56 served and heard | 05/19/2006 |
| Final pre-trial conference held and firm trial date set | 06/18/2006 |
| Case disposed | 08/17/2006 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be
notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline
for filing return of service.**
This case is assigned to session F sitting in **Rm 10A (Cambridge) at Middlesex Superior
Court.**

Dated: 06/24/2005                                          Edward J. Sullivan
                                                            Clerk of the Courts
                                                    BY: Martha Fulham Brennan
                                                            Assistant Clerk

Location: Rm 10A (Cambridge)
Telephone: 617-494-4010 EXT 4281

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                           SUPERIOR COURT DEPARTMENT
                                         OF THE TRIAL COURT
                                         CIVIL ACTION NO. 05-2197

                                    )
TARGET STAFFING, INC.               )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )
                                    )
DIVERSIFIED INVESTMENT              )
ADVISORS, INC.                      )
                                    )
        Defendant.                  )
                                    )

## **TRANSMITTAL AFFIDAVIT OF MAYETI GAMETCHU, ESQ.**

I, Mayeti Gametchu, declare and state as follows:

1.      I am an attorney, in good standing, admitted to practice law in the Commonwealth

of Massachusetts and the U.S. District Court for the District of Massachusetts.

2.      I am a partner with the law firm of Paragon Law Group, LLP and counsel for

Diversified Investment Advisors, Inc. ("Diversified").

3.      I make this declaration on my own personal knowledge.

4.      I submit this declaration for the purpose of transmitting to the Court, pursuant to

28 U.S.C. § 1446, a true and accurate copy of the following documents filed with the U.S.

District Court for the District of Massachusetts: (i) Diversified's Notice of Removal, (ii)

Transmittal Affidavit of Mayeti Gametchu, Esq., (iii) Affidavit of Marc Cahn, (iv) Notice of

Notice of Removal, (v) Notice of Removal. All of these documents were served on Plaintiff

contemporaneously with their filing.

I declare under pains and penalties of perjury pursuant to the laws of the Commonwealth of

Massachusetts that the foregoing is true and correct.

Executed on July 22, 2005 in Boston, MA.

Mayeti Gametchu (BBO# 647787)

## **CERTIFICATE OF SERVICE**

I, Mayeti Gametchu, hereby certify that, on July 22, 2005, I caused a true and correct
copy of the foregoing document to be served by first class mail, postage prepaid, on counsel for
Plaintiff, Alexander Furey, 28 State Street, Suite 1100, Boston, MA 02109.

Mayeti Gametchu

0054-002-101914

MAS-20041213
macirobe

Case 1:05-cv-11551-RCL Document 1-6 Filed 07/22/2005 Page 1 of 1
Commonwealth of Massachuset

MIDDLESEX SUPERIOR COURT
Case Summary
Civil Docket

07/22/2005
11:42 AM

## MICV2005-02197
### Target Staffing, Inc. v Diversified Investment Advisors, Inc.

| | | | | | | |
|---|---|---|---|---|---|---|
| **File Date** | 06/23/2005 | **Status** | Needs review for service (acneserv) | | | |
| **Status Date** | 06/23/2005 | **Session** | F - Cv F (10A Cambridge) | | | |
| **Origin** | 1 | **Case Type** | A01 - Services, labor, materials | | | |
| **Lead Case** | | **Track** | F | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Service** | 09/21/2005 | **Answer** | 11/20/2005 | **Rule12/19/20** | 11/20/2005 |
| **Rule 15** | 11/20/2005 | **Discovery** | 04/19/2006 | **Rule 56** | 05/19/2006 |
| **Final PTC** | 06/18/2006 | **Disposition** 08/17/2006 | | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Target Staffing, Inc.
Active 06/23/2005

**Private Counsel 634157**
Alexander Furey
Furey & Associates LLC
28 State Street - Suite 1100
Boston, MA 02109
Phone: 617-573-5114
Fax: 617-573-5115
Active 06/23/2005 Notify

**Defendant**
Diversified Investment Advisors, Inc.
Served: 06/27/2005
Served (answr pending) 06/27/2005

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 06/23/2005 | 1.0 | Complaint & civil action cover sheet filed |
| 06/23/2005 | | Origin 1, Type A01, Track F. |
| 06/27/2005 | 2.0 | Plaintiff Target Staffing, Inc.'s MOTION for appointment of special process server Carol Wilkinson and motion Allowed. (Kern, J.) |
| 07/15/2005 | 3.0 | SERVICE RETURNED: Diversified Investment Advisors, Inc.(Defendant) 06/27/05 in hd, 275 Grove St., Newton, MA |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only). _Target Staffing Inc. V. Diversified Investment Advisors, Inc._

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ___ I. 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   ___ II. 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
   740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases

   ☒ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
   315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
   380, 385, 450, 891.

   ___ IV. 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 635, 640, 650, 660,
   690, 810, 861-865, 870, 871, 875, 900.

   05-1551 RCL

   ___ V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

   YES ☐    NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐    NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES ☐    NO ☒

   A. If yes, in which division do all of the non-governmental parties reside?

   Eastern Division ☐    Central Division ☐    Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division ☒    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES ☐    NO ☒

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _Kevin J. O'Connor, Paragon Law Group LLP_
ADDRESS _184 High St. Boston, MA 02115_
TELEPHONE NO. _617 - 399 - 7950_

(CategoryForm.wpd -5/2/05)

**☜JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff **Stow, MA**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Purchase, NY**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)   **05 11551 RCL**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
**28 USC § 1446**

Brief description of cause: **Contract claim removed from state court**

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE **7/22/05**

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____