## Commonwealth of Massachusetts
## SUPERIOR COURT DEPARTMENT
## THE TRIAL COURT
## CAMBRIDGE

MICV2005-02197

I, Karen O'Connor, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings entered in the Superior Court on the 23rd of June, in the year of our Lord, Two Thousand Five

> In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this 28th of July, in the year of our Lord, Two Thousand Five

Karen A. O'Connor

Deputy Assistant Clerk



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS



TARGET STAFFING, INC.        )
                             )
    Plaintiff,               )
                             )
    v.                       )
                             )
DIVERSIFIED INVESTMENT       )
ADVISORS, INC.               )
                             )
    Defendant.               )
_____)

**CIVIL ACTION NO. 05-11551 RCL**

## NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1446

Defendant Diversified Investment Advisors, Inc. ("Diversified") hereby submits its

Notice of Removal, pursuant to 28 U.S.C. § 1446, on the basis of diversity jurisdiction. As

grounds for removal, Diversified states as follows:

1.    Plaintiff originally filed its Complaint in the Superior Court of Massachusetts for

Middlesex County.

2.    Diversity jurisdiction exists in this case, pursuant to 28 U.S.C. § 1332(a)(1),

because Diversified is not a citizen of Massachusetts or of any state in which Plaintiff resides or

is a citizen and because Plaintiff alleges an amount in controversy in excess of $75,000.

3.    Plaintiff's Complaint alleges that Plaintiff is a Massachusetts corporation with a

principal place of business in Massachusetts. Compl. ¶ 1.

4.    Contrary to the Complaint's allegations, Diversified's principal place of business

is in New York State (4 Manhattanville Road, Purchase, NY 10577). Affidavit of Marc Cahn

("Cahn Aff.") ¶ 3. Diversified is incorporated in the state of Delaware. Id.

5.     Plaintiff's Complaint alleges that Plaintiff is "entitled to damages of at least

$125,000." Compl. at 1.

6.     Diversified also submits contemporaneously herewith the Affidavit of Marc Cahn,

the Notice of Notice of Removal, and Transmittal Affidavit of Kevin J. O'Connor, Esq.,

attaching thereto true and accurate copies of the (i) Summons, (ii) Complaint, (iii) Tracking

Order, (iv) Transmittal Affidavit of Kevin J. O'Connor, and (v) Docket Entries, all of which

were filed with or issued by the Superior Court for Middlesex County.

Dated: July 22, 2005                          Respectfully Submitted,
Boston, MA

Kevin J. O'Connor (BBO# 555250)
Mayeti Gametchu (BBO# 647787)
PARAGON LAW GROUP, LLP
184 High Street
Boston, MA 02110
(617) 399-7950

Attorneys for Defendant

DIVERSIFIED
INVESTMENT ADVISORS, INC.

## CERTIFICATE OF SERVICE

I, Mayeti Gametchu, hereby certify that, on July 22, 2005, I caused a true and correct
copy of the foregoing document to be served by first class mail, postage prepaid, on counsel for
Plaintiff, Alexander Furey, 28 State Street, Suite 1100, Boston, MA 02109.

0054-002-101908.doc

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, SS.**

**SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT**

**05-2197**

TARGET STAFFING, INC. )
)
  Plaintiff, )
)
v. ) **Civil Action No.**
)
DIVERSIFIED INVESTMENT )
ADVISORS, INC. )
)
  Defendant. )
)

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

JUN 2 3 2005

Edward J. Sullivan
CLERK

### COMPLAINT AND JURY DEMAND

This is an action by Plaintiff Target Staffing, Inc. ("Target") against Defendant

Diversified Investment Advisors, Inc. ("Diversified" or "Company") for breach of contract,

breach of the covenant of good-faith and fair dealing, unjust enrichment, tortuous interference

with contract and business relations, and unfair business practices. The claims at issue flow from

Diversified's breach of a Temporary Services Agreement ("Agreement") which provides that

Diversified must compensate Target in the event it directly or indirectly hires and/or converts

any temporary personnel referred to the Company by Target. Starting in or about April 2005,

Diversified repeatedly breached the parties' Agreement by improperly hiring and/or converting

five (5) such temporary personnel without compensating Target. As a result of Diversified's

actions, Target is entitled to damages of at least **$125,000.**

```
8305E000006/23/05CIVIL          240.00
8305E000006/23/05SOR  CHARGE     15.00
8305E000006/23/05SUMMONS          5.00
8305E000006/23/05SECC            20.00
```

## **PARTIES**

1.      Plaintiff Target Staffing, Inc. is a Massachusetts corporation whose principal place of business is located in Stow, Massachusetts.

2.      Defendant Diversified Investment Advisors, Inc. is a Delaware Corporation with a principal place of business located at 275 Grove Street, Newton, Massachusetts.

## **FACTUAL BACKGROUND**

3.      Diversified is a financial services company, headquartered in Purchase, NY, which has offices located throughout the United States including an office in Newton, Massachusetts which employs approximately 80 people.

4.      Target is a small staffing agency that focuses on the placement of temporary and permanent personnel to work within the financial services industry. Target is owned and operated by Janine Bush who has close to ten years experience in the recruiting/staffing industry. Ms. Bush operates Target out of her home in Stow, Massachusetts while she cares for her two young children.

5.      Over the years, Ms. Bush has worked to establish a network of individuals and companies that refer her candidates looking for permanent and/or temporary work in the financial services industry. In the event Ms. Bush places a candidate on a permanent basis, Target charges a set percentage of that individual's annual salary. If Ms. Bush places an individual on a temporary basis, then Target is paid a mark-up rate of the individual's hourly billable rate. If the placement is going to be on a temporary basis, Target hires the candidate as an independent contractor via a written agreement. The candidate is not considered an employee of Target's.

6.      In or about the Spring of 2004, Ms. Bush was introduced to Marc H. Cahn, the Vice President and General Counsel for Diversified. At that time, Mr. Cahn informed Ms. Bush that

2

Diversified was looking for temporary and permanent help in their Newton Office and requested that Target supply the Company with suitable candidates.

7.      On or about March 19, 2004, Ms. Bush e-mailed Mr. Cahn a Temporary Services Agreement and related Attachment which establishes the terms of the parties' relationship with respect to the placement of temporary personnel. *See* Temporary Services Agreement and Attachment, collectively attached hereto as Exhibit 1.

8.      The parties' Agreement explicitly prohibits Diversified from poaching personnel temporarily placed by Target without Diversified providing it with just compensation. In Section 7.1 of the Agreement, Diversified explicitly "agrees not to condone or assist in the transitioning, recruiting or enticing of Target Staffing, Inc.'s temporary personnel on assignment at [Diversified] to transfer to any third party or alternative status." *Id.* at p.5, ¶ 7.1.

9.      The Attachment to the parties' Agreement clarifies exactly when and how much Diversified is required to pay Target upon the hiring and/or conversion of any such temporary personnel. Specifically, the Attachment to the Agreement states:

> [a] conversion fee will become due in the event that you, your associates or affiliates engage the services of a Target Staffing employee or former employee (either as a salaried employee or as an independent contractor) or engage the employee through an employee leasing company or other temporary help agency through whom you lease personnel, during a temporary assignment or within one (1) year after the last day of any assignment when that employee has been introduced whether directly or indirectly as a result of his or her temporary assignment. Please refer to the schedule of charges on the following page.

Exhibit 1, p. 8. The Attachment to the Agreement also includes a document entitled "CONVERSION PLACEMENT FEE SCHEDULE" which provides a formula to calculate the

conversion fee that Diversified is required to pay Target for each temporary worker that is hired

and/or converted by the Company. *See Id.* at p. 10.

10.    The Agreement was signed by Mr. Cahn as General Counsel of Diversified Actuarial

Services, a division of Diversified Investments, on March 25, 2004. *Id.* at p. 7. Likewise,

pursuant to the language of the Attachment to the Agreement, Diversified consented to its

explicit terms upon the acceptance of Target's temporary candidates in late March 2004. *Id.* at p.

9.

11.    Thereafter, over the next 12 months, Target referred several candidates to Mr. Cahn

which were temporarily hired by Diversified, including the following individuals:

| Candidate | Title | Date of Hire | Annual Salary |
|---|---|---|---|
| Brody Reese | Product Development | August 2004 | $97,760 |
| Mirza Borogovac | Data Analyst | September 2004 | $35,360 |
| Gennadiy Ravvin | Senior Project Analyst | March 2004 | $98,840 |
| Andrew Lumb | Calculation Analyst | March 2004 | $55,120 |
| Robert Compagna | Senior Data Analyst | February 2005 | $99,840 |

12.    For almost a year after the parties entered into the Agreement at issue, Target and

Diversified shared a mutually profitable relationship. Ms. Bush and Mr. Cahn worked closely

together to ensure that Diversified hired and retained highly qualified individuals willing to work

on a temporary basis and forego receiving the benefits of full-time employment. At the same

time, each week Target earned a mark-up on the hourly rate paid by Diversified to each of its

temporary workers.

13.    However, in or about early April 2005, Ms. Bush was informed by Mr. Cahn that

Diversified had instructed Robert Compagna to cease working with Target and incorporate

4

himself so that Mr. Compagna could have more flexibility and work directly with Diversified. Contrary to the requirements of the parties' Agreement, Diversified did not compensate Target for converting Mr. Compagna. In response, Ms. Bush explained to Mr. Cahn that Diversified was in breach of the explicit terms of the parties' Agreement and was causing Mr. Compagna to violate his own agreement with Target. Target demanded that Diversified honor the terms of its Agreement and cease interfering with its business relationship with Mr. Compagna.

14.    Thereafter, Diversified and Target's relationship deteriorated. In or about May 2005, Mr. Cahn instructed Gennadiy Ravvin, Brody Reese, and Mirza Borogovac that they, too, were to breach their agreements with Target and engage the services of another staffing agency -- BeneTemps, Inc. ("BeneTemps"), a direct competitor of Target. Once again, Diversified ignored the explicit terms of the parties' Agreement and failed to compensate Target for the loss of its personnel.

15.    In or around June 1, 2005, Diversified recruited and hired Andrew Lumb as a permanent salaried employee just a few months after he left Diversified for a permanent position with another company -- Mercer Human Resources Consulting ("Mercer"). Mr. Lumb had previously been placed at Diversified by Target as temporary personnel and worked at the Company until March 2005. The parties' Agreement specifically provides that if Diversified hires one of Target's temporary personnel within one (1) year of leaving Diversified, then it must compensate Target pursuant to the applicable Conversion Fee Schedule. *See Id.* at p. 9. Not only did Diversified fail to compensate Target when it hired Mr. Lumb, it also caused Target to forfeit a $12,125.00 commissions it had earned from Mercer for placing Mr. Lumb.

16.    Due to the actions of Diversified, Target has lost (5) five of its temporary personnel -- a significant portion of its yearly revenue. Pursuant to the parties' Agreement and attached

5

Conversion Fee Schedule, Diversified is required to compensate Target for directly or indirectly

hiring and/or converting each of those employees as follows:

| Employee | Date of Conversion | Amount Owed Under Conversion Fee Schedule |
|---|---|---|
| Brody Reese | May 20, 2005 | $24,195.60 |
| Mirza Borogovac | May 13, 2005 | $8,751.60 |
| Gennadiy Ravvin | May 20, 2005 | $24,710.40 |
| Andrew Lumb | June 13, 2005 | $13,642.20 |
| Robert Compagna | May 20, 2005 | $29,652.48 |

17.     In addition, Target continues to lose weekly revenue for each of the temporary personnel

that Diversified has directly or indirectly hired and/or converted from Target. Due to the actions

of Diversified, Target has lost the following weekly revenues:

| Employee | Amount of Lost Weekly Revenue | Date of Conversion |
|---|---|---|
| Brody Reese | $720.00 | May 20, 2005 |
| Mirza Borogovac | $520.00 | May 20, 2005 |
| Gennadiy Ravvin | $480.00 | May 20, 2005 |
| Robert Compagna | $740.00 | April 15, 2005 |

18.     On or about June 1, 2005, Mr. Cahn sent a letter to Target's counsel terminating the

parties' Agreement due to his belief that Target allegedly failed to withhold state and federal

taxes from the paychecks of the temporary personnel hired and/or converted by Diversified. In

short, Mr. Cahn tried to intimidate Ms. Bush and avoid honoring the parties' Agreement by

making unfounded accusations of tax fraud. In addition, Mr. Cahn threatened to terminate the

6

individuals whom Ms. Bush had placed at Diversified and take away their livelihood if she pursued this dispute.

## COUNT I
## BREACH OF CONTRACT

19. Plaintiff repeats and incorporates by reference paragraphs one through eighteen as if fully stated here.

20. On or about March 25, 2004, Target and Diversified entered into an Agreement whereby (for a period of one (1) year from the employees' last day at the Company) Diversified was required to compensate Target in the event it directly or indirectly hired and/or converted any of the temporary personnel that Target referred to Diversified.

21. From April 2005 to June 2005, Diversified directly and indirectly hired and/or converted five (5) of target's temporary personnel (Compagna, Ravvin, Reese, Borgovac, and Lumb) without compensating Target as required by the explicit terms of the parties' Agreement.

22. As a result of Diversified's breach of contract, Target has suffered damages.

## COUNT II
## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

23. Plaintiff repeats and incorporates by reference paragraphs one through twenty-two as if fully stated here.

24. Diversified breached the covenant of good faith and fair dealing implied in the Agreement by failing to compensate Target for the temporary personnel that it directly and indirectly hired and/or converted in violation of the explicit terms of the parties' Agreement.

25. As a result of Diversified's breach of the implied covenant of good faith and fair dealing, Target has suffered damages.

7

## COUNT III
## UNJUST ENRICHMENT

26.    Plaintiff repeats and incorporates by reference paragraphs one through twenty-five as if fully stated here.

27.    By the wrongful acts and conduct described above, Diversified has been unjustly enriched to the expense and detriment of Target.

28.    As a result, Target has suffered damages for which Diversified is legally responsible.

29.    Diversified is liable to Target under the principle of unjust enrichment.

## COUNT IV
## TORTIOUS INTERFERENCE WITH
## CONTRACTUAL AND ADVANTAGEOUS BUSINESS RELATIONS

30.    Plaintiff repeats and incorporates by reference paragraphs one through twenty-nine as if fully stated here.

31.    At all relevant times, Diversified had knowledge of the agreements that Target had entered into with Compagna, Ravvin, Reese, Borgovac and Lumb.

32.    By directly and/or indirectly hiring and/or converting Compagna, Ravvin, Reese, Borgovac and Lumb, Diversified has interfered with and induced the breach of Target's agreement with those individuals and/or has interfered with Company's advantageous business relationship with those individuals.

33.    As a result, Target has forever lost those individuals as clients (in some cases to a direct competitor) and has suffered damages for which Diversified is legally responsible.

34.    Diversified is liable to Target under the principle of tortuous interference with contractual and advantageous business relations.

8

## COUNT V
## UNFAIR TRADE PRACTICES

35. The Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs one through thirty-four as if fully stated herein.

36. Upon entering into the Agreement at issue with Target, Diversified engaged in trade or commerce within the Commonwealth of Massachusetts. The acts of Diversified set forth above including, but not limited to, (1) its bad faith breach of the Agreement by directly or indirectly hiring and/or converting five (5) of target's temporary personnel without compensating Target as required by the explicit terms of the parties' Agreement; (2) its improper termination of the Agreement; (3) its threat to terminate the temporary personnel placed by Target if it pursued this matter; and (4) its bad faith refusal to pay Target for the damages that it has suffered, are unfair and deceptive acts under Mass. Gen. L. ch. 93A, §§ 2, 11.

37. The actions constituting Diversified's unfair and deceptive acts occurred primarily and substantially within Massachusetts. Specifically, Target suffered a breach of the Agreements and sustained damages while operating in Massachusetts.

38. Diversified's violations of Mass. Gen. L. ch. 93A were willful.

39. As a result of Diversified's unfair and deceptive acts, Target has sustained damages.

9

WHEREFORE, Plaintiff Target Staffing, Inc. respectfully requests that the Court enter judgment in its favor on Counts I-V of the Complaint and grant the following relief:

1.    Under Counts I-V, award damages in the amount of $125,000, plus interest.

2.    Under Count V, find that Defendant has committed willful violations of Mass.

Gen. L. ch. 93A, §§ 2, 11 and award Plaintiff treble damages and attorneys' fees;

3.    Award Plaintiff its reasonable costs, including attorneys' fees and expenses,

incurred in connection with this case; and

4.    Grant such further relief as the Court considers appropriate.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted by the Plaintiff,

**TARGET STAFFING, INC.**

By its attorney,


Alexander Furey, BBO# 634157
Furey & Associates LLC
28 State Street
Suite 1100
Boston, Massachusetts 02109
Phone (617) 573-5114

Dated: June 22, 2005

# Target Staffing, Inc

## TEMPORARY SERVICES AGREEMENT

This Temporary Services Agreement (the "Agreement"), effective the 17th day of March, 2004, is entered into by and between Target Staffing Inc and Diversified Investments, with offices at 275 Grove Street, Newton, MA ("Client").

WHEREAS Client wishes to obtain certain temporary services from Target Staffing Inc, and Target Staffing Inc wishes to provide such services to Client;

NOW, THEREFORE, Client and Target Staffing Inc, in consideration of the mutual promises contained herein and other good and valuable consideration given and received, agree to the following terms and conditions:

### 1. SERVICES

   1.1 The services to be provided by Target Staffing Inc under this Agreement shall be to furnish to Client temporary personnel with skills meeting the requirements specified by Client.

   1.2 Client shall designate its authorized representative at each of its locations who shall place orders for temporary personnel by telephoning Target Staffing Inc. When Target Staffing Inc receives an order, Target Staffing Inc will telephone Client's representative within two hours from the time of such order informing Client whether it can service the order.

   1.3 Temporary personnel will report to a Client location and supervisor specified on each order at the prescribed time indicated. Client will supervise the assigned temporary personnel in performing the agreed upon duties. Client agrees to provide any general or specific safety training necessary to perform the assignment including safety information regarding exposures to hazardous substances, and to insure that Target Staffing Inc employees use any protective equipment necessary to perform the assignment safely.

   1.4 If any temporary personnel of Target Staffing Inc fails to meet Client's requirements for the services to be provided, and Client notifies Target Staffing Inc of its dissatisfaction during the first eight (8) hours of the assignment, Target Staffing Inc shall immediately remove the personnel from the assignment, and Client shall not be required to make any payment to Target Staffing Inc for the hours worked by such temporary personnel, up to a maximum of eight (8) hours.

# Target Staffing, Inc

2.    **TEMPORARY PERSONNEL**

   2.1 The temporary personnel assigned to Client are employees of Target Staffing Inc, not of Client.

3.    **TARGET STAFFING INC FEE FOR SERVICES**

   3.1 Target Staffing Inc shall pay its temporary personnel at an hourly Pay Rate for each regular hour worked by said temporary personnel.  Client shall pay Target Staffing  a fee at an hourly Bill Rate for each regular hour worked by Target Staffing Inc's temporary personnel.  The hours worked by Target Staffing Inc's temporary personnel will be set forth in weekly time sheets and approved by Client's representative.

   3.2 If Client wants any Target Staffing Inc temporary personnel to receive vacation or holiday pay, Client will include the vacation or holiday time on the timecards for the Target Staffing Inc's temporary personnel, and Client will pay Target Staffing Inc for such time at the rates referred to above.

   3.3 The hourly Bill Rates for the temporary services can be adjusted by Target Staffing Inc, with approval from Client, from time to time for any reason including (but not limited to) increases in minimum wage, statutory taxes and premiums, and liability and fidelity insurance costs.

   3.4 Target Staffing Inc shall submit invoices on a weekly basis to the designated Client location/representative for hours worked (and any approved vacation or holiday time) for the previous week together with a copy of the timecard(s) signed by the Target Staffing Inc temporary personnel and Client's authorized representative. Client shall pay all invoices net upon receipt in its twice-per-month invoice billing cycle, without offset or deduction.  Client shall promptly notify Target Staffing Inc of any disputed or questioned item on an invoice, and the parties shall work together in good faith to resolve the issue; in the event it is determined that Client is entitled to a credit, Target Staffing Inc shall credit Client in the next invoice for the appropriate amount.  In the event that Client fails to pay Target Staffing Inc's invoice when due, Client shall pay all collection and/or litigation costs incurred by Target Staffing Inc, plus reasonable attorney's fees.

4.    **TERM AND TERMINATION**

# Target Staffing, Inc

4.1    The initial term of this Agreement shall commence on March 17, 2004, 2004 and shall continue through  March 17, 2005.  Thereafter, this Agreement shall be automatically extended from year to year unless and until either party terminates it as of an anniversary date by giving the other party written notice of such termination at least 30 days prior to such anniversary date.

4.2    Notwithstanding the foregoing, either party has the right, exercisable in its sole discretion at any time, to terminate this Agreement for its convenience, by giving the other party at least 30 days written notice of such termination.

4.3    If Client in its sole discretion determines Target Staffing Inc's performance under this Agreement to be unsatisfactory, Client will give Target Staffing Inc written notice thereof.  If within thirty (30) days after receipt of such notice, Target Staffing Inc has not corrected such unsatisfactory performance to Client's satisfaction; Client may thereafter terminate this Agreement immediately upon written notice to Target Staffing Inc.

Subject to Section 4.3 above, each party has the right to terminate this Agreement immediately upon written notice to the other party, at any time, in the event of any material breach by the other party of its obligations under this Agreement.

## 5.    RELATIONSHIP OF PARTIES

5.1    At all times during the term of this Agreement, Target Staffing Inc shall retain its independent status, and Target Staffing Inc and its employees are and shall at all times be independent contractors to Client.

5.2    Neither Target Staffing Inc nor any of Target Staffing Inc's employees, associates, contractors, agents or representatives will be eligible for any of Client's employee benefits.

5.3    Target Staffing Inc shall comply with all federal and state labor and employment laws applicable to its performance of the Services.

# Target Staffing, Inc

6.   **INDEMNIFICATION**

Target Staffing Inc shall indemnify, defend, and hold harmless Client, its affiliates, shareholders, directors, officers, employee, agents, and other representatives from and against any and all claims, demands, losses, liabilities, damages, expenses (including reasonable attorney fees) and causes of action (hereinafter Claims) for (i) injury to, or death of, any person, including without limitation the employees, agents, contractors, licensees, and invitees of Client unless such injury or death is covered by Client's workers' compensation policy; (ii) damage to, or destruction of, any property, whether owned by Client or otherwise; or (iii) the failure of Target Staffing Inc to comply with the provisions of this Agreement, but in each case, only to the extent such Claims are caused by the fault, negligence, gross negligence, or recklessness of Target Staffing Inc in the performance of the services defined in the Agreement. Target Staffing Inc's indemnity herein shall not extend to or cover any Claim arising from the negligence or intentional misconduct of Client; where personal injury or death or loss of, damage to or destruction of property is the result of the joint negligence or intentional misconduct of Client and Target Staffing Inc, the amount of the Claim for which Client shall be entitled to indemnification shall be limited to that portion thereof attributable to the negligence or intentional misconduct of Target Staffing Inc.

Liability hereunder is contingent upon prompt notification by Client to Target Staffing Inc of the assertion of any claim within the purview of this Agreement so as to permit Target Staffing Inc reasonable time within which to notify its insurers of such claim, and the tender of the defense thereof by Target Staffing Inc.

Client shall provide, upon its own premises, a suitable place for Target Staffing Inc's temporary personnel to work in the performance of the Services to be rendered under this Agreement which shall comply with all applicable statutes and ordinances relating to health and safety.

Client shall not authorize any Target Staffing Inc temporary personnel to operate any motor vehicle, automotive or truck equipment without signing a driver's release form supplied by Target Staffing Inc. Notwithstanding anything to the contrary in this Agreement, Client agrees to accept full responsibility for any bodily injury, physical loss, property damage or liability including fire, theft and collision caused or incurred by any Target Staffing Inc temporary personnel while said personnel is operating any of the aforementioned vehicles or equipment.

Excluded from the indemnification described in this section, is the handling of cash, checks, keys, credit cards, merchandise, negotiable instruments or other valuables unless Target Staffing Inc has given its express prior approval in writing. Further, no Target Staffing Inc temporary personnel assigned to Client is

# Target Staffing, Inc

authorized or empowered to render a professional opinion on any financial statement on behalf of Target Staffing Inc or Client, and may not sign his or her name or Target Staffing Inc's name to any financial statement or any tax return, while on assignment to Client.

Client agrees that Target Staffing Inc will not be responsible for any claims covered by its Fidelity Bond unless such claims are reported in writing to Target Staffing Inc, in accordance with the notice provisions set forth in this Agreement, within ten (10) working days of the discovery of the alleged wrongful act.

IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, SPECIAL, OR PUNITIVE DAMAGES OR EXPENSES OR LOST PROFITS (REGARDLESS OF HOW CHARACTERIZED AND EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES) UNDER OR IN CONNECTION WITH THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION (WHETHER IN CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY, OR OTHERWISE).

## 7. TRANSITIONING OF EMPLOYEES

During the term of this Agreement and upon any termination of this Agreement, Client agrees to the following:

7.1 Client agrees not to condone or assist in the transitioning, recruiting or enticing of Target Staffing Inc's temporary personnel on assignment at Client to transfer to any third party or alternate status, with the exception of an offer of full-time regular employee status at Client. If, within _____ months of assignment, Client hires any Target Staffing Inc's temporary personnel as a Client employee, or if any such Target Staffing Inc temporary personnel is employed by another temporary help company or agency and works on the premises of Client, Client shall promptly pay Target Staffing Inc an amount equal to 18 percent of the candidate's permanent salary; provided, however, that Client shall not be obligated to pay such fee for any Target Staffing Inc temporary personnel who was on Client's payroll immediately prior to becoming employed by Target Staffing Inc.

7.2 In the event of termination of this Agreement, each Target Staffing Inc temporary personnel will continue the assignment through the period of time referenced on the current Target Staffing Inc work order unless it is determined there is a failure to perform the job function required, or the assignment has legitimately terminated for other reasons. In this event, Client will not consider the same employee for reassignment at Client through any other source in a similar capacity.

# Target Staffing, Inc

Target Staffing Inc agrees that in the event of termination of this Agreement, Target Staffing Inc will not remove its temporary personnel from assignment at Client prior to completion of assignment for reasons other than Client's failure to pay in a timely manner for the Services provided or for breach by Client of this Section 8.

8.    **AUDIT RIGHTS**

For a period of at least two years following the date particular Services are provided to Client under this Agreement, or for such longer period as may be required by applicable law, Target Staffing Inc agrees to maintain accounting records necessary to verify the basis for all charges billed to Client hereunder. Client will have the right to audit such records during normal business hours upon at least seven (7) days prior written notice to Target Staffing Inc. Each party will bear its own costs and expenses in connection with such audit.

9.    **NOTICES**

Any notice required or permitted to be delivered by one party to another under or in connection with this Agreement shall be deemed sufficiently given after three business days if sent by certified U.S. mail, return receipt requested, or after one business day if sent by nationally recognized overnight carrier to the attention of the individual(s) and at the address(es) indicated below:

If to Target Staffing Inc, to:

> Target Staffing Inc
> Box 33
> Stow, MA 01775
>
> _____

If to Client, to:

> _____
> _____
> _____

With a copy to:

> _____
> _____
> _____

# Target Staffing, Inc

10. **MISCELLANEOUS**

10.1 Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns. This Agreement shall not be assigned in whole or in part by either party without the prior written consent of the other party, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, either party may without the consent of the other party assign this Agreement, or delegate the performance of all or part of its obligations and duties hereunder, to an Affiliate (provided the party guaranty the Affiliate's performance) or to any successor to all or substantially all of its interest in the business to which this Agreement relates. As used herein, "Affiliate" of a party shall mean any corporation or other business entity controlled by, controlling or under common control with, such party.

10.2 Governing Law. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Massachusetts, notwithstanding its choice of law principles.

10.3 Compliance with Laws. In the performance of this Agreement, each party agrees to comply with all applicable laws, rules, and regulations of duly constituted governmental bodies.

10.4 Severability. In the event that any provision of this Agreement or the application thereof becomes or is declared by a court of competent jurisdiction to be illegal, void or unenforceable, the remainder of this Agreement will continue in full force and effect. The parties further agree to replace such illegal, void or unenforceable provision of this Agreement with a legal, valid and enforceable provision that will achieve, to the extent possible, the economic, business and other purposes of such illegal, void or unenforceable provision.

10.5 Waiver. The failure of either party to enforce at any time or for any period of time any of the provisions of this Agreement shall not be construed to be a waiver of such provisions or of its right thereafter to enforce each and every provision.

10.6 Force Majeure. Neither party to this Agreement shall be liable for its failure to perform hereunder due to circumstances beyond its reasonable control, including but not limited to strike, riot, war, fire, act of God, accident, plant breakdown not caused by the fault or neglect of such party, compliance with any law, regulation or order, whether valid

# Target Staffing, Inc

or invalid, of the United States of America or any other governmental body.

10.7 Survival. Any respective obligations of Target Staffing Inc or Client hereunder which by their nature would continue beyond the termination, cancellation or expiration of this Agreement shall survive such termination, cancellation or expiration.

10.8 Complete Understanding; Modification. This Agreement, together with all attachments, exhibits and addenda attached hereto, constitute the full and complete understanding and agreement of the parties relating to the subject matter hereof and supersedes all prior or contemporaneous understandings and agreements relating to such subject matter. Any waiver, modification or amendment of any provision of this Agreement shall be effective only if in writing and signed by the parties hereto.

10.9 Headings. Section headings are included for convenience only and are not to be used to construe or interpret this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates set forth below, to be effective as of the date first set forth above.


By:Target Staffing Inc                     By: Diversified Actand Service(Client)

Signature: _Ann Bush_              Signature: _____

Printed Name: _Janine Bush_        Printed Name: _Marc Calm_

Title: _Manager_                   Title: _General Counsel_

Date: _3 20 04_                    Date: _3 25 04_

978-897-0505
admin@targetstaffing.com
P.O. Box 33, Stow, MA  01775

# Target Staffing, Inc

Thank you for selecting Target Staffing to fill your temporary staffing requirements. The following confirms our discussion and understanding and sets forth the terms under which our employee is assigned to your company. The terms of this Agreement as defined below shall automatically apply to any subsequent assignment (s) of temporary staff through Target Staffing.

## GUARANTEE

Target Staffing guarantees your satisfaction with the assigned employee's services by extending a one-day (eight hour) guarantee as follows: if for any reason you are dissatisfied on the first day of an assignment with the employee's technical abilities, please let us know immediately and Target Staffing will not charge you for the first eight hours worked. We will then make a reasonable effort to replace the individual immediately.

## BILLING

Our employee will present a time sheet to his/her immediate supervisor for verification at the end of each week. Our compensation to this employee is on a weekly basis: therefore, your firm or company (hereinafter referred to as the client) will be billed weekly at the agreed upon rate, and payment will be due weekly upon receipt of the invoice. Overtime hours will be billed at rate multiples in accordance with State, Provincial and Federal Laws. In the event that the client fails to pay the charges of Target Staffing when due (whether for temporary or permanent placement of personnel), the client shall pay interest charges on overdue invoices at the highest legal rate as well as all collection and/or litigation costs, inclusive of reasonable attorney's fees.

## CONVERSION FEE

A conversion fee will become due in the event that you, your associates or affiliates engage the services of a Target Staffing employee or former employee (either as a salaried employee or as an independent contractor) or engage the employee through an employee leasing company or other temporary help agency through whom you lease personnel, during a temporary assignment or within one (1) year after the last day of any assignment when that employee has been introduced either directly or indirectly as a result of his or her temporary assignment. Please refer to the schedule of charges on the following page.

## POLICIES

The supervision of the employees of Target Staffing on the premises of the client is the responsibility of the client. All rescheduling or extension of assignments should be done by contacting Target Staffing. Any employee assigned by Target Staffing is an employee of Target Staffing. Target Staffing warrants that its employees are adequately covered by Worker's Compensation Insurance and that it assumes total responsibility to pay the employee's salary, all related federal, state, provincial and local payroll taxes and other applicable charges and to make all applicable deductions.

# Target Staffing, Inc

Your satisfaction is our primary concern. We hope that you will evaluate the
performance of our employee on the form we provide at the end of the assignment. This
feedback is an important part of our on-going effort to ensure the highest standards for
our specialized temporary services. Please contact us immediately if you have a question
regarding the above terms or any aspect of our services.

Acceptance of our employee confirms your acceptance of the above conditions.


**Target Staffing, Inc**

## CONVERSION PLACEMENT FEE SCHEDULE

(A)    Our conversion placement fee schedule is based upon our normal full permanent placement fee schedule one percent (1%) for each one thousand dollars of annual compensation to a maximum fee of 33% of the annual compensation.

### PERMANENT PLACEMENT FEE SCHEDULE

| COMPENSATION | FEE |
|---|---|
| 0 to $22,999.99 COMPENSATION | 22% OF ANNUAL |
| $23,000 to $23,999.99 COMPENSATION | 23% OF ANNUAL |
| $24,000 to $24,999.99 COMPENSATION | 24% OF ANNUAL |
| $25,000 to $25,999.99 COMPENSATION | 25% OF ANNUAL |
| $26,000 to $26,999.99 COMPENSATION | 26% OF ANNUAL |
| $27,000 to $27,999.99 COMPENSATION | 27% OF ANNUAL |
| $28,000 to $28,999.99 COMPENSATION | 28% OF ANNUAL |
| $29,000 to $29,999.99 COMPENSATION | 29% OF ANNUAL |
| $30,000 to $30,999.99 COMPENSATION | 30% OF ANNUAL |
| $31,000 to $31,999.99 COMPENSATION | 31% OF ANNUAL |
| $32,000 to $32,999.99 COMPENSATION | 32% OF ANNUAL |
| $33,000 AND UP COMPENSATION | 33% OF ANNUAL |

$8 \, 2. \, 8$

(B)    We offer reductions in this fee for conversions based on the number of billable hours worked by our temporary worker as follows -

| Billable Hours Worked | Reduction From Full Fee |
|---|---|
| 0 - 250 | No Reduction |
| 251 - 400 | 10% Reduction |

**978-897-8505**
admin@targetstaffing.com
P.O. Box 33, Stow, MA 01775

# Target Staffing, Inc

| 401 - 550 | 20% Reduction |
| 551 + Above | 25% Reduction |

(C)   For part time employees, the fee will be based on a forty (40) hour work week and then multiplied by the percentage of the 40 hour work week that the employee works.

Example:

The fee for a part time accounting clerk to be engaged by the Client at $10/hour pay rate for 30 hours per week after having completed 300 hours of temporary employment would be calculated as follows:

$10.00 x 40 hours per week = $400.00 per week;
$400.00 x 52 weeks per year = $20,800.00 annualized.
Full time fee = $20,800 x 22% = $4,576.00

Part time fee = $4,576 x 30/40 = $3,432.00
Less 10% reduction per (B) above = $3,088.80

**TERMS: NET DUE UPON RECEIPT**

$48 \times 40 = 1920$ wk

$1920 \times 52 wks = 99 840$

$99 840 \times \frac{332}{20} = 32,942 20$

$32 942 20 \times \frac{30}{.75} = $$

Less 25% disc

**978-897-8505**
admin@targetstaffing.com
P.O. Box 33, Stow, MA 01775

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

# MICV2005-02197
## Target Staffing, Inc. v Diversified Investment Advisors, Inc.

| | | | | | | |
|---|---|---|---|---|---|---|
| **File Date** | 06/23/2005 | **Status** | Needs review for service (acneserv) | | | |
| **Status Date** | 06/23/2005 | **Session** | F - Cv F (10A Cambridge) | | | |
| **Origin** | 1 | **Case Type** | A01 - Services, labor, materials | | | |
| **Lead Case** | | **Track** | F | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Service** | 09/21/2005 | **Answer** | 11/20/2005 | **Rule12/19/20** | 11/20/2005 |
| **Rule 15** | 11/20/2005 | **Discovery** | 04/19/2006 | **Rule 56** | 05/19/2006 |
| **Final PTC** | 06/18/2006 | **Disposition** 08/17/2006 | | **Jury Trial** | Yes |

### PARTIES

| | |
|---|---|
| **Plaintiff**<br>Target Staffing, Inc.<br>Active 06/23/2005 | **Private Counsel 634157**<br>Alexander Furey<br>Furey & Associates LLC<br>28 State Street - Suite 1100<br>Boston, MA 02109<br>Phone: 617-573-5114<br>Fax: 617-573-5115<br>Active 06/23/2005 Notify |
| **Defendant**<br>Diversified Investment Advisors, Inc.<br>Served: 06/27/2005<br>Served (answr pending) 06/27/2005 | **Private Counsel 647787**<br>Mayeti Gametchu<br>Paragon Law Group LLP<br>184 High Street<br>Boston, MA 02110<br>Phone: 617-399-7950<br>Fax: 617-399-7955<br>Active 07/25/2005 Notify |

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 06/23/2005 | 1.0 | Complaint & civil action cover sheet filed |
| 06/23/2005 | | Origin 1, Type A01, Track F. |
| 06/27/2005 | 2.0 | Plaintiff Target Staffing, Inc.'s MOTION for appointment of special<br>process server Carol Wilkinson and motion Allowed. (Kern, J.) |
| 07/15/2005 | 3.0 | SERVICE RETURNED: Diversified Investment Advisors, Inc.(Defendant)<br>06/27/05 in hd, 275 Grove St., Newton, MA |
| 07/25/2005 | 4.0 | Defendant's Transmittal Affidavit of Mayeti Gametchu, Esq. |